In the Matter of Robert William HAGEDORN, Debtor.

**FIFTH THIRD BANK, Plaintiff,**

v.

**Robert William HAGEDORN, Defendant.**

Bankruptcy No. 1–82–00154.
Adv. No. 1–82–0147.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Dec. 30, 1982.

See also, Bkrtcy., 25 B.R. 666.

Sherri Feuer, Cincinnati, Ohio, for plaintiff.

Robert A. Goering, Cincinnati, Ohio, for defendant.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

RANDALL J. NEWSOME, Bankruptcy Judge.

This matter is before the Court pursuant to a complaint filed by the Fifth Third Bank alleging that a debt owed by defendant Robert Hagedorn is not dischargeable in bankruptcy under 11 U.S.C. § 523(a)(2)(A). Pursuant to the December 14 trial held on such complaint, the Court hereby submits its findings of fact, opinion and conclusions of law:

### Findings of Fact

1. In approximately 1964 defendant Robert Hagedorn was issued a Visa credit card. According to his testimony, defendant's balance of charges on this card have almost always been at or near his credit limit.

This testimony is largely borne out by defendant's Exhibit A which consists of Hagedorn's monthly Visa statements from December of 1977 to February, 1982. During most of the period from December, 1977 to February, 1978, defendant maintained his Visa balance well below his credit limit. From March 9, 1979 to October 15, 1981 his Visa balance was never more than $170.00 below his credit limit and was usually not more than $50.00 under that limit. His balance exceeded his credit limit in 14 of those 30 months, and in three of those months he failed to make a monthly payment.

During that same period he charged 17 cash advances on his Visa card, ranging in amounts from $20.00 to $175.00.

2. In June of 1981 defendant's marriage was dissolved at his request. Pursuant to the dissolution agreement, defendant is re-

quired to pay $500.00 per month in child support for his three children. His take home pay is $568. bi-weekly. Defendant was not represented by counsel in the divorce proceeding. Hagedorn's other fixed monthly expenses included $100.00 for rent, $100.00 for transportation, $130.00 for a second mortgage, and $160.00 to $200.00 for food.

3. In October of 1981 defendant sought to obtain a consolidation loan from First National Bank of Cincinnati for the purpose of paying off his Master Charge, Visa, Sears and Shillito charge accounts, as well as a previous consolidation loan from First National. Defendant testified that he discussed his financial condition with First National, and attempted to arrive at a budget. On October 9, 1981 First National issued the consolidation loan to the defendant which he was to repay at $289.51 per month. Defendant's entire Visa balance of $1428.75 was paid off on October 15, 1981. (Defendant's Ex. A).

4. In November of 1981 Hagedorn asked that his former wife's name be taken off of his Visa account. According to his testimony, he was instructed by the bank to submit a letter memorializing this request. He did so on November 9, 1981. (Plaintiff's Ex. 1). His request was granted, and he was issued a Visa card in his name only. No evidence was presented as to whether an investigation into Hagedorn's financial status was made at the time the new Visa card was issued, or the extent of that investigation if one was made.

5. Between November 23, 1981 and December 18, 1981, defendant charged $636.65 in purchases and $800.00 in cash advances on his newly-issued Visa account. His purchases included a $145.59 video game as a Christmas present to his son, and a $274.25 television set as a Christmas present to all of his children. His cash advances were used to help pay for a $389.00 damage claim arising out of an automobile accident in which his oldest son was involved. Some of the money was used to pay fire and life insurance totaling $209.00; $100.00 went towards the purchase of tires for his car; and some went for purchasing other Christmas presents. He also used the money to pay his $289.51 monthly consolidation loan payments.

6. Defendant testified that he was not fully cognizant of how quickly his Visa balance was increasing. He intended to pay his Visa bill with whatever money he had left at the end of each month. From the size and pattern of payments prior to December of 1981, it appears that this was the manner in which the defendant had always handled his Visa account. At the time the charges were incurred, defendant believed he could make the required payments on his account. He did not make a payment in November, but did make a $10.00 payment on December 30, 1981.

7. Shortly after Christmas of 1981, defendant realized that he was unable to meet his debts as they became due. He sought the aid of a credit counsellor to formulate a budget, but the effort was unsuccessful. On or about January 4, 1982 he consulted an attorney who discussed the possibility of filing a Chapter 13 plan or a straight bankruptcy under Chapter 7. After mulling over his attorney's advice, on January 20, 1982 defendant directed that a Chapter 7 bankruptcy petition be filed on his behalf.

8. At no time after December 18, 1981 did the defendant incur additional charges on the Visa account.

### Opinion

The law applicable to this case was extensively reviewed in a companion suit (*First National Bank of Cincinnati v. Hagedorn,* 25 B.R. 666, [Bkrtcy., S.D.Ohio, 1982]). As we noted in that case:

"... [A] creditor satisfies the four requirements of § 523(a)(2)(A) in such cases if he establishes by clear and convincing evidence that: 1) the debtor made false representations, in that he made charges on a credit card at a time when he did not have the means to pay for such charges; 2) the debtor intended to deceive the creditor in that he did not not intend to pay for the charges he incurred; 3) the

creditor reasonable relied upon debtor's false representations; and 4) the creditor's reliance was the proximate cause of the creditor's loss. *See, e.g., In re Vegh,* 14 B.R. 345 (Bkrtcy., S.D.Fla.1981)."

■ In hindsight, it is obvious that Hagedorn was not able to repay the charges on his Visa card during November and December of 1981, and that by incurring such charges, he thereby made false representations for purposes of § 523(a)(2)(A). With the addition of a $289.51 monthly payment on his October 9, 1981 consolidation loan, defendant's fixed monthly expenses exceeded his disposable income.

Whether the Fifth Third Bank reasonably relied upon these false representations is a far more difficult question. Unlike the situation in the *First National* case, there is no evidence that Fifth Third knew of Hagedorn's consolidation loan, and thus could easily have determined that he was beyond the limits of his means.

Simply stated, the question is whether, at the time it issued a new card in his name only, Fifth Third was armed with sufficient facts to put a reasonably prudent entity on notice that a complete investigation into Hagedorn's financial condition was warranted. While the matter is not without doubt, we conclude on the record before us that Fifth Third was not put on sufficient notice to require á detailed investigation into Hagedorn's financial status. While Hagedorn's performance record on his Visa account would never qualify him for a AAA rating from Standard & Poor, it was not so suspect as to raise a "red flag" of caution before issuing a new card in his name alone.

■ However, that same performance record, combined with the defendant's testimony, leads this Court to conclude that Fifth Third has failed to establish by the requisite proof that defendant made false representations with the intent to deceive. It bears emphasis that § 523(a)(2)(A) encompasses only frauds which "in fact, involve moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient." *In Re Byrd,* 9 B.R. 357, 4

C.B.C.2d 205, 207 (Bkrtcy., D.D.C.1981); *See also In re Green,* 2 C.B.C.2d 905, 908 (Bkrtcy., N.D.Ga.1980). While such conduct can be established by circumstantial evidence, (*In Re Newmark,* 20 B.R. 842, 858 [Bkrtcy., E.D.N.Y.1982]) the creditor's heavy burden of proof and the inherent difficulty in proving fraud pose substantial hurdles to overcome.

The facts in this case simply do not bear sufficient indicia of deceit for plaintiff to meet its burden. While Hagedorn did make many purchases and cash.advances with his Visa card in a relatively short time, the pattern of his credit card usage was not so inconsistent with his conduct prior to November of 1981 as to instill a "firm conviction or belief" in the Court of deceitful intent. Unlike the situation in *In Re Manuel,* 24 B.R. 744 (Bkrtcy., S.D.Ohio 1982) (Perlman, J.), a classic "shopping spree" case, almost all of Hagedorn's purchases and all of his cash advances exceeded $50.00. This fact is significant, in that purchases of over $50.00 probably would have required the merchant to obtain telephonic approval from Visa. Thus, it does not appear that Hagedorn was attempting to conceal the extent or nature of his purchases. *See, In Re Manuel, supra.* This case is also distinguished from many of the "shopping spree" cases, in that Hagedorn's purchases and cash advances did not exceed his credit limit.

The only distinct impression conveyed by the circumstantial evidence, as well as Hagedorn's testimony, is that of a man who had never used his Visa account wisely; who had become accustomed over the years to living on the edge of insolvency; who went through a bitter divorce which left him emotionally and financially in a shambles; and who was attempting, in his own inept and foolish way, to continue to live his life as he had in the past. While his financial condition as of October of 1981 may have appeared hopeless to an outsider, the evidence is insufficient to establish that he comprehended the seriousness of his financial problems at that time. When he finally realized in December that he was unable to

pay his bills, he made no further purchases on his Visa Account.

Hagedorn's failure to comprehend his financial condition might be attributable to many things, but the record does not establish fraud or deceit as the motive for his conduct.

Having failed to carry the burden of proof as to this prerequisite to recovery under § 523(a)(2)(A), the Court hereby finds in favor of the defendant.

## Conclusions of Law

1. This Court has jurisdiction over this action under 28 U.S.C. § 1471(a) and the General Order of the United States District Court for the Southern District of Ohio, entered December 23, 1982.

2. The debt which defendant incurred on his Visa credit card is not nondischargeable under 11 U.S.C. § 523(a)(2)(A).

a. Plaintiff has established that the debtor was not able to pay for charges he made on his Visa card after October 9, 1981, and thereby made false representations when he incurred such charges.

b. Plaintiff has failed to establish by clear and convincing evidence that defendant's false representations were made with the intent to deceive.

3. It is therefore ORDERED that the debt of Robert William Hagedorn to the Fifth Third Bank is determined to be dischargeable and judgment be entered in favor of the defendant.

IT IS SO ORDERED.