**In re Joseph E. NOLAN, Bankrupt.**

**Bankruptcy No. 79–306–BK–J.**

United States Bankruptcy Court,
M. D. Florida,
Jacksonville Division.

Dec. 14, 1979.

Earl M. Barker, Marks, Gray, Conroy & Gibbs, Jacksonville, Fla., for plaintiff.

David R. Wilt, Buschman & Wilt, Jacksonville Beach, Fla., for defendant Joseph E. Nolan.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is to determine the dischargeability of a debt under Section 17 of the Bankruptcy Act.

Plaintiff, Southeast Services, Inc., alleges that defendant, the bankrupt, obtained money or property by false pretenses, false representations, and fraud within the meaning of Section 17a(2), by continuing to use his Master Charge credit card after it had been revoked. It seeks a finding of nondischargeability of all debts incurred on the card subsequent to the revocation.

At the trial, defendant testified that the disputed use of the card occurred during a period of extended unemployment. He testified that he had anticipated that he would shortly obtain employment and then pay the bills, that he at all times had adequate cash on hand to satisfy the debt until just immediately prior to filing the petition, and that right up until the time of the filing he intended to pay the debt. He also did not recall receiving a letter of revocation. Plaintiff introduced a post office receipt signed by the defendant and business records corroborated by testimony that such a letter was sent.

## FINDINGS OF FACT

(1) All the purchases and charges in dispute were made by the defendant, and are debts for which, absent bankruptcy, he would be responsible.

(2) Defendant received notice that the credit card had been revoked.

In view of the following discussion, it is not necessary for this Court to decide whether bankrupt was insolvent at the time the charges were made or whether he intended to pay the debt.

## CONCLUSIONS OF LAW

Plaintiff asserts that what we have is a classic case of a spending spree on credit in anticipation of bankruptcy. Defendant responds that he is only guilty, if anything, of being an optimist. He was certain that he would soon find a job and used the card for job-seeking expenses, preferring to hold onto his cash for noncharge-able purchases. Because he was able and

willing to pay at the time the debts were incurred, defendant contends they were not the product of fraud, misrepresentation or false pretenses.

Defendant relies on *Davison-Paxon Co. v. Caldwell,* 115 F.2d 189 (5th Cir. 1940), and its progeny. In *Davison,* the defendant bankrupt went on a credit spending spree although she knew she was insolvent and that the credit would not have been granted had she disclosed her financial condition. The court found the debt dischargeable because there was no "actual overt false pretense or misrepresentation." The holding was similar in *In re Boydston,* D.C., 391 F.Supp. 29, 520 F.2d 1098 (5th Cir., 1975), when a failure to reveal insolvency and the incurring of debts with no intention to repay were in question. The court found the evidence suggestive "more as reckless, irresponsible, naivete  .   .   .   than cold, calculated, sophisticated planning by one bent on financial deception." 391 F.Supp. at 30.

In *In re Wood,* 571 F.2d 284 (5th Cir., 1978), also cited by the defendant, the debtor had never missed a payment on his bills right up until he filed the petition. That situation is a far cry from the present circumstances, where the defendant was six months delinquent before he stopped using the card.

The debtors in the above cases merely took advantage of improvidently granted credit. The circumstances here smack far more strongly of fraud. The plaintiff here affirmatively denied further credit to the defendant. The Court notes that the monthly statements, entered into evidence, reveal that none of the purchases made after the revocation letter was sent was for more than $50.00, the sum at which a merchant customarily must call for approval.

■ A case more on point is *Detroit Bank & Trust Co. v. Cushingberry (In re: Cushingberry),* 5 BCD (E.D.Mich.1977). There, the defendant exceeded his charge card credit limit and continued to use the card subsequent to a demand for its return. Holding the portion of the debt in excess of the credit limit nondischargeable, the court noted:

In making a credit card purchase a charge card customer represents that he is a valid holder of the card and that the purchase is being made in compliance with the conditions subject to which the card was issued. In every purchase made the bankrupt represented that he had sufficient credit extended by the bank to take care of the purchase involved.

*Id.* at 955. Each time the defendant here presented his charge card to a merchant, knowing it had been revoked, he misrepresented the validity of the card and defrauded the card's surety, the plaintiff. Such misrepresentations are within the purview of section 17a(2).

Another case that is apropos is *In re Brewster,* 20 C.B.C. 532 (E.D.Va.1979), holding that charges made subsequent to a demand for return of the card constitutes a nondischargeable ·debt. As the *Brewster* court cogently, albeit ungrammatically, opined, "(t)he honest but merely mistaken debtor is eligible for relief. The deliberate schemer is not.  .   .   .   (T)he bankrupt schemed to make use of this card as long as he possibly could. Having been advised not to use the card, the continued use thereof .   .   .   amounted to fraudulent conduct for which he is responsible." *Id.* at 537–38.

Faced with actual misrepresentation and fraud, the Court need no longer decide the issues of insolvency and present intention to repay.

In light of the foregoing, the Court shall enter a final judgment holding those portions of the debt incurred subsequent to the revocation to be nondischargeable.