**In the Matter of Stephanie Lee BANASIAK, Debtor.**

**FIRST NATIONAL BANK OF CHICAGO, Plaintiff,**

v.

**Stephanie Lee BANASIAK, Defendant.**

**Bankruptcy No. 80–580 C.**

United States Bankruptcy Court, M. D. Florida, Tampa Division.

Jan. 9, 1981.

J. T. Schrotel, Tampa, Fla., for debtor.

Warren J. Knaust, St. Petersburg, Fla., for First National Bank of Chicago, for plaintiff.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS a contested discharge proceeding and the Debtor's right to obtain relief through the discharge proceeding of a debt admittedly due and owing is challenged under § 523(a)(2)(A). The complaint was filed by the First National Bank of Chicago (the Bank) and charges that the Debtor, Stephanie Lee Banasiak obtained monies, properties and services by false pretenses. The underlying facts controlling this controversy are basically simple but, however, what makes this case different from most other § 523(a)(2)(A) actions is the type of defense interposed by the Debtor which is an alleged incapability to form the necessary fraudulent intent due to a mental condition which is, according to the Debtor, indispensable to sustain a claim of non-dischargeability under this Section. The facts as they appear from the record can be summarized as follows:

Stephanie Banasiak is a single person who, prior to September of 1979, was employed in the State of Illinois as a school teacher teaching at the high school level. The Debtor was hospitalized twice, for mental problems, once in December of 1978 and the second time in March of 1979. In August of 1979, the Debtor left her employment and her residence without notifying anyone of her whereabouts. As a result, her parents reported her as a missing person.

Beginning the month of October of 1979, her parents received statements from the Bank indicating very substantial charges on her Visa card. The total charges ultimately incurred are in excess of $4,500 even though her charge limit was $800 and she was admittedly aware of this fact. In addition, each statement sent by the Bank states the credit limit of a card holder. Most of these charges were for food and lodging although some of those include purchases of clothing and miscellaneous items.

The record further reveals that the parents of the Debtor notified the Bank several times and attempted to prevail on the Bank to cancel the Visa card, but they were informed that since the Debtor was an adult, the Bank was unable to cancel the card. It is true, however, that the Debtor's parents contacted the Bank primarily for the reason to find out their daughter's whereabouts. The statements of the Bank reveal that during the relevant period, the Debtor extensively travelled through Illinois, Kentucky, Tennessee, Georgia and ultimately ended up in Bradenton, Florida. Between January of 1980 and March of 1980, she was treated at a mental alcoholic rehabilitation center, although there is no evidence in this record that she was an alcoholic.

In March of 1980, the Debtor was taken by her minister to an emergency psychiatric facility. The psychiatrist was not able to obtain a significant history from her due to the fact that she was vague and withdrawn. Although the psychiatrist had no independent and meaningful data, he opined, based on information given to him by others, that the Debtor was schizophrenic of the paranoid type. Due to her bizarre behavior, the psychiatrist recommended hospitalization. In fact, on March 14, 1980, involuntary papers to commit her to a state mental hospital were prepared. Since the Debtor was willing to voluntarily seek this treatment, she went to Tampa and on April 7, 1980 was admitted to the Florida Mental Health Institution, a treating facility located in Tampa, where she remained until June 7, 1980, when she was discharged.

There is no competent evidence presented to establish the diagnosis made at the Tampa treating facility. After she was released from the Tampa facility, she visited a psychiatrist several times and according to the psychiatrist, she is now well stabilized, she is in remission, she has good contact with reality and she is able to function provided she stays on medication.

There is equally no evidence in this record to establish that she was incapable of differentiating between right and wrong, or that she was not aware of the nature and character of her acts in charging on her Visa card. There is, however, evidence that she aimlessly wandered around the country, seemingly in an attempt to find an answer to her problems. There is some doubt that she was able to give, during this period of time, any thoughts to her responsibility to pay the charges made on the Visa card or any thoughts concerning how she was going to pay for the charges, although it is quite evident that she could not pay for these charges and she knew it since she was totally without any income during the relevant period.

On April 30, 1980, the Debtor filed her voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Bank then filed its complaint. The claim of non-dischargeability as set forth in the Bank's complaint is based on § 523(a)(2)(A) and § 523(a)(6) of the Bankruptcy Code. The first count based on the contention of the Bank that the Debtor obtained money and property by the use of a credit card issued by the Bank and incurred charges well knowing that she would not pay for the same and, therefore, by virtue of that Section obtained money and property by false pretenses. In the alternative, it is the contention of the Bank that the debt was a result of malicious conversion of property of another, therefore, non-dischargeable under the Code. Section 523(a)(2)(A) and § 523(a)(6) provide in part as follows:

> § 523   *Exceptions to Discharge.*
>
> "(a) A discharge under § 727, § 1141 or § 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (2) for obtaining money, property, services or an extension, renewal, or refinance of credit, by—
>
> (A) false pretenses, a false representation, or actual fraud, . . .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity. . . ."

Section 523(a)(6) is obviously inapplicable to the facts alleged or proved since that Section deals with willful and malicious injury by the Debtor to the property of another and not with conversion which is impliedly included in § 523(a)(2)(A). A non-dischargeable claim based on § 523(a)(2)(A) requires a proof of false pretense or false representation by the Debtor who obtained money or property from another.

■   This Section is basically a readaption of former dischargeability provisions of the Bankruptcy Act, § 17(a)(2), and represents no substantial change. Therefore, in order to sustain a claim of non-dischargeability under § 523(a)(2)(A), the Bank must establish (1) that the Debtor made a materially false representation; (2) that the representation was made with intent to defraud; and (3) that the Bank relied on the false representation.

Purchase of merchandise by use of a credit card is an implied representation to the merchant and to the issuer of the card, that the buyer has the means and the intention to pay for the purchase. *In re Cushingberry*, 5 BCD 954 (E.D.1977); *In re Boydston*, 520 F.2d 1098 (5th Cir. 1975); *In re Black*, 373 F.Supp. 105 (E.D.Wis.1974). Accordingly, when one purchases goods on credit and either knows that he is unable to comply with the payment requirements of his contract with the card issuer, or when it appears from the evidence that he had no intention to pay for them, he obtains the goods through false pretenses which constitutes a form of fraud on the creditor.

The case of *In re Wood*, 571 F.2d 284, 285 (5th Cir. 1978), focused on the intent of the purchaser in finding a credit card debt dischargeable. The Court found that the Debtor in that case had been able to meet his debts as they came due, that he had not contemplated bankruptcy at the time the charges were incurred and that a factor in his later inability to pay his debts was additional unanticipated medical expenses. On these facts, the Court determined that there was no fraudulent intent on the part of the debtor to render the debt non-dischargeable.

This Court, however, is satisfied that the Debtor in this case had the requisite intent to render her debt non-dischargeable on the basis that she obtained money or property or services by false pretenses. This conclusion is evidenced by the fact that at the time these charges were made, the Debtor had no means of support and no plan or intent to repay the charges. This Court finds the proffered testimony of the psychiatrist who examined the Debtor unpersuasive to support the conclusion that the Debtor was incapable of formulating the requisite intent.

Notwithstanding the above, an important question remains unanswered with respect to what amount, if any, of the $4,550.03 debt incurred by this Debtor may be rendered dischargeable. This Court is satisfied, that having reviewed the record, $344.79 should be discharged. This is so because that amount represents the outstanding balance which existed as of August 6, 1980. As of August 6, 1980, this Court is satisfied that the Debtor still had an intention to repay the credit card obligation. In fact, the record reveals that in July, the Debtor made a $28 payment which reduced her outstanding balance from $362.85 to $339.37.

In light of the foregoing, this Court is satisfied that a portion of the $4,550.03 indebtedness, to wit: $344.99 should be discharged because the Bank failed to establish all of the operating elements of § 523(a)(2)(A). With respect to the remaining $4,105.04, that debt shall be declared to be non-dischargeable.

A separate final judgment will be entered in accordance with the foregoing.