**In the Matter of Deborah Jean HUTCHINSON, Debtor.**

**MANUFACTURERS HANOVER TRUST CO., Plaintiff,**

v.

**Deborah Jean HUTCHINSON, Defendant.**

Bankruptcy No. 882–81460–17.
Adv. No. 882–0595–17.

United States Bankruptcy Court, E.D. New York.

Jan. 6, 1983.

Deborah J. Hutchinson, debtor, pro se.

Michael H. Ganz by Robert J. Katcher, Hicksville, N.Y., for Manufacturers Hanover Trust Co.

Lionel S. Jassy, New York City by Susan M. Shyab, Baldwin, N.Y., for European American Bank & Trust.

## MEMORANDUM & ORDER

BORIS RADOYEVICH, Bankruptcy Judge.

Plaintiff's complaint, filed September 3, 1982, alleges that the defendant obtained from it, money and property by false pretense and representations, and through the use of materially false written statements. Said complaint seeks judgment determining the non-dischargeability of the debt owed to Manufacturers Trust Co. and an award of $31,265.99. The defendant's answer filed November 5, 1982, asserts as defenses her lack of fraudulent intent, and the assertion that the plaintiff was negligent in failing to mitigate its damages. The matter came on for trial November 22, 1982, at which time both sides submitted their proofs. On the record produced at trial this Court makes the following:

## FINDINGS OF FACT

1. The debtor-defendant, Deborah Jean Hutchinson requested and was issued a Master Card No. 52171982–610–588 and a Visa Card No. 4102982693334 (hereinafter "the credit cards") by the plaintiff-creditor Manufacturers Hanover Trust Co. (hereinafter "the bank"). Each card had a credit line of $500.00. Transcript of November 23, 1982 at pp. 5, 6. (Hereinafter Tr. at " ").

2. Prior to the debtor's last Master Charge payment made November 29, 1979, her balance due was $379.54. Tr. at 10.

3. Between December of 1979 and March of 1981 the debtor obtained $4,362.29 in credit from the bank by making numerous purchases on her Master Card. Tr. at 6, 10. *See* Debtor's Answer.

4. Prior to the debtor's last Visa payment made December 18, 1979 her balance due was $490.67. Tr. at 10.

5. Between January of 1980 and March of 1981 the debtor obtained $26,043.99 of credit from the bank by making numerous purchases on her Visa Card. Tr. at 6, 10.

6. The debtor's total outstanding liability owed to the bank is $31,265.99. Tr. at 8.

7. On June 4, 1982 the debtor filed her Chapter 7 petition with this Court. Said petition reflects that the debtor had $222,-050.13 in unsecured debt and $1,000 in assets. Tr. at 16.

8. During the period of the above-mentioned purchases the debtor was unemployed and was subsisting upon $6,000 per year in disability insurance benefits. Tr. at 16–18, 24.

9. Prior to this period, the debtor was employed by the National Bank of North America. Tr. at 23.

10. With each purchase made with the credit cards, the debtor presented her card and signed her name to a purchase draft or cash advance slip. *See* Defendant's answer.

11. Each time the debtor made purchases with her credit card, the debtor represented to the bank her intention and ability to repay it for the credit extended.

12. At the time of her credit card purchases, the debtor had sufficient mental capacity to be aware of her financial situation.

13. At the time the debtor made her credit card purchases, she had no intention to repay the bank for the credit it was extending.

14. The bank reasonably relied upon the implied representations accompanying the use of the debtor's credit cards, in assuming that she would repay it for any credit extended and money advanced.

## CONCLUSIONS OF LAW

1. The elements of misrepresentation, and intent to deceive, may be established by implication.

2. The debtor's credit card presentment and signature on a credit receipt, impliedly represents an ability and intent to repay all credit extended.

3. The debtor's patent inability to repay an accumulating credit card debt impliedly establishes an intent to deceive.

4. The determination of a patent inability to repay a credit debt can be derived from an examination of the solvency of the debtor as it relates to the quantity and nature of the debtor's credit purchases.

5. Every man is presumed sane and capable of managing his own affairs. Any party asserting mental incapacity bears the burden of proof.

6. A lending creditor's negligence in preventing a debtor from running up charge accounts is not a legally sufficient defense to an action brought to determine the dischargeability of the resulting debts.

7. The plaintiff having established a prima facia case under 11 U.S.C. § 523(a)(2), and said case being unrebutted, the involved debts are declared non-dischargeable.

8. The debtor's admitted contractual liability to Manufacturers Hanover Trust Co. entitles it to judgment.

*Note:* Complaints have been filed by Manufacturers Hanover Trust Co. and European American Bank & Trust Co. A single memorandum has been prepared and filed by this Court for both adversary proceedings.

## MEMORANDUM

■ In the case at bar, the debtor admits her use of the involved credit cards and the correctness of the resulting debt. In seeking to have these debts declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(2),[1] the task of the bank is to establish that (1) the debtor obtained credit through representations which she knew were false or which were made with reckless disregard of their truthfulness; (2) the debtor had an intent to deceive; and (3) the bank actually and reasonably relied upon the debtor's misrepresentations to it's detriment. *Carini v. Matera,* 592 F.2d 378 (7th Cir.1979); *In re Schnore,* 13 B.R. 249 (Bkrtcy.W.D.Wis.1981); *In re Poteet,* 12 B.R. 565 (Bkrtcy.N.D.Tx.1981); *In re Ratajczak,* 5 B.R. 583 (Bkrtcy.M.D.Fla.1980). *See also In re Newmark,* 20 B.R. 842 (Bkrtcy.E.D.N.Y.1982); *In re DeRosa,* 20 B.R. 307 (Bkrtcy.S.D.N.Y.1982); *In re Lo Bosco,* 14 B.R. 739 (Bkrtcy.E.D.N.Y.1981). As the lender, in a typical credit card transaction, fully relies upon the expectation of repayment of any money advanced;[2] the resolution of this case is limited to a determination of the remaining issues involving the state of mind of the debtor at the time of her credit card purchases.

■ It is generally accepted that the establishment of the element of misrepresentation need not be overt, but may be implied. *Generally see In re Boydston,* 520 F.2d 1098 (5th Cir.1975); *In re Wood,* 571 F.2d 284 (5th Cir.1978). Within the context of a credit card transaction, this implied misrepresentation has consistently been held to be demonstrated by the debtor's presentment of her card, and her signature on the credit receipt. Each time a debtor uses her credit card she is making the continuing representation that she is using the card in accordance with the line of credit extended, and that she has the wherewithall and intent to repay all credit extended. *In re Perticaro,* 5 C.B.C. 663 (Bankr.E.D.N.Y.1975), aff'd No. 74 B 1384 (E.D.N.Y. Dec. 15, 1976); *In re Black,* 373 F.Supp. 105 (E.D.Wis.1974); *In re Schnore, cite supra;*

---

1. 11 U.S.C. § 523(a) provides:
   (a) A discharge under section 742 . . . does not discharge an individual debtor from any debt . . .
   (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
   (A) false pretense, false representation, or actual fraud . . .
   (B) use of a statement in writing—
   (i) that is materially false . . .

2. The exceptions to this rule, which are not applicable to this case, involve the rare instances of prior compromise of disputed credit card liability and the creditor's acknowledgement of keeping inaccurate financial records. *See In re Schnore, cite supra.*

*In re Banasiak,* 8 B.R. 171 (Bkrtcy.M.D.Fla. 1981); *In re Quintana,* 4 B.R. 508 (Bkrtcy.S. D.Fla.1980); *In re Nolan,* 1 B.R. 644 (Bkrtcy.M.D.Fla.1979); *In re Curcio,* 1 B.R. 727 (Bkrtcy.E.D.Mich.1979). *See also In re Cushingberry,* 5 B.C.D. 954 (Bkrtcy.E.D. Mich.1977); *In re Dyer,* 4 B.C.D. 180 (Bkrtcy.W.D.Wis.1978); *In re Schnieder,* 3 B.C.D. 175 (Bkrtcy.D.Nev.1977). Applying the facts in the present case, the bank has prima facia established the element of misrepresentation.

■ The second element that the banks must establish is the intent of the debtor to deceive them into believing that she intended to pay for the credit-purchased goods, when in fact the opposite is true. This intent not to repay need not be explicit, and may also be inferred from the circumstances of the case. A recognized factor from which such an inference can be drawn is the continued accumulation of credit by a debtor who is patently unable to repay the debt. This determination may be derived from an examination of the solvency of the debtor as it relates to the quantity and nature of the debtor's credit purchases. *See California Conserving Co. v. D'Avanzo,* 62 F.2d 528 (2d Cir.1933); *In re Black, cite supra; In re Ciavarelli,* 16 B.R. 369 (Bkrtcy. E.D.Pa.1982); *In re Poteet, cite supra; In re Schartner,* 7 B.R. 885 (Bkrtcy.N.D.Ohio 1980); *In re Kell,* 6 B.R. 695 (Bkrtcy.D.Col. 1980); *In re D'Amico,* 1 B.R. 170 (Bkrtcy.W. D.N.Y.1979).

■ In this instance the debtor was unemployed and subsisting upon $6,000 of annual disability benefits. Examination of the debtor's bankruptcy schedules reveals that during an approximate 15 month interval, the debtor, in addition to the $50,944.98 of combined debt owed to the plaintiff banks, accumulated over $170,000 of other credit related debt. The bulk of this debt is derived from such frivolous luxury items as vacations to Puerto Rico, Nevada, and the Virgin Islands, as well as cash advances and a consumer goods spending spree. Such facts, without the need for further discussion, demonstrate the debtor's obvious financial inability to repay these debts and indicate her readiness to further abuse the situation after realizing her predicament. The finding establishes the debtor' intent to deceive, as it would be the extraordinary individual who could honestly maintain a reasonable expectation that she would or could repay these debts.

The debtor attempts to rebut the banks' cases with the defense that during the period of the involved credit purchases, she did not have sufficient mental capacity to knowingly make a false representation.[3] The debtor's testimony alleges that from November of 1977 to sometime shortly before the present date, she was suffering from a severe emotional disorder which necessitated outpatient psychiatric care. It is argued that this disorder combined with the effects of the accompanying drug therapy, distorted her perception and reasoning ability. This impairment is alleged to have prevented the debtor from realizing her precarious financial situation. It is asserted that a finding that the debtor was without an awareness of her inability to repay the debts would prevent the inferential establishment of her misrepresentation and intent to deceive.

The banks offer no evidence with regard to the debtor's mental state. Instead they rely upon the presumptions of sanity and the ability to manage one's own affairs. *See Weed v. Mutual Benefit L. Ins. Co.,* 70 N.Y. 561 (1877); *Parmelee v. Cameron,* 41 N.Y. 393 at 395 (1869).

In support of her defense of mental incapacity, the debtor fails to offer any admissi-

---

**3.** Despite her affliction, the debtor maintains that she, at all times, specifically remembers having the intent to repay her debts. Relying upon this assertion of fact, she inadvertently limits her mental incapacity defense to the issue of misrepresentation. As an awareness of ones financial circumstances has already been demonstrated to be inherently related to the circumstantial establishment of both the elements of misrepresentation and intent to deceive, and as the debtor is representing herself pro se, this Court for the purpose of discussion will extend her defense to the latter issue.

ble corroborative proof.[4] No mental health professional or lay witnesses testified in support of her alleged condition. Verification of the debtor's allegations through examination of the consistency of her testimony is also not available as the debtor herself could not explain the nature of her affliction, nor could she remember the circumstances surrounding "any" of her credit purchases.

In this case the debtor bears the burden of rebutting the aforementioned presumptions and of establishing her mental incompetence. *See generally, Carini v. Matera, cite supra; In re Banasiak, cite supra.* The debtor's evidence presented at trial is insufficient to do so. Accordingly, this Court finds that the debtor had sufficient mental capacity to be aware of her financial circumstances.

The debtor's alternative defense, that the banks were negligent in failing to prevent her from using her credit cards after she reached her credit limit, is summarily dismissed. Such negligence is not a legally sufficient defense to a creditor's objection to the dischargeability of a debt. *In re Vegh,* 14 B.R. 345 (Bkrtcy.S.D.Fla.1981); *In re Reinhart,* 1 B.C.D. 666 (Bkrtcy.E.D. Va.1975).

The plaintiffs have established a prima facia case under § 523(a)(2), and that case being unrebutted by the debtor, the debts owed to the plaintiffs are declared nondischargeable, with Manufacturers Hanover Trust Co. and European American Bank and Trust Co. being awarded judgment in the sums of $31,265.99 and $19,678.99 [5] respectively.

Settle judgment in accordance herewith.

---

4. The debtor attempted to admit into evidence a letter from her physician concerning her mental state. The attorneys for the banks raised formal objections upon the grounds of hearsay, which were sustained. Tr. at 17.

5. After reading page three of the transcript in the *European American Bank & Trust Co. v. Hutchinson,* A.P. No. 882–0693–17, this Court is not sure whether any of this $19,678.99 has already been reduced to judgment. If so, this figure should be reduced accordingly when judgment is presented for signature.