**In re Mike WALDMAN and Kim Waldman a/k/a Ilona Waldman, Debtors.**

**AMERICAN EXPRESS COMPANY, Plaintiff,**

**v.**

**Mike WALDMAN and Kim Waldman a/k/a Ilona Waldman, Defendants.**

**No. 82 B 11144 (PBA).**

United States Bankruptcy Court, S.D. New York.

Sept. 26, 1983.

Martin J. Siegel, New York City, for debtors.

Friend & Reiskind, New York City, for American Express Co.; Edwin M. Reiskind, Jr., New York City, of counsel.

### DECISION AND ORDER DENYING MOTION

PRUDENCE B. ABRAM, Bankruptcy Judge:

American Express Company (Amexco) filed an application and motion[1] seeking to revoke the discharge granted to these debtors under Bankruptcy Code § 727(d) on the grounds that the debtors' petition failed to disclose material facts as to assets acquired by the debtors immediately preceding the filing of the petition and for such other and further relief as the court might deem just and proper. Martin J. Siegel, an attorney, filed on January 26, 1983, apparently on behalf of both bankrupts an affidavit in opposition to Amexco's application. A trial was held on September 15, 1983 at which time Amexco produced one witness. Mr. Siegel appeared and stated that he had been unable to communicate with Mike Waldman and did not know his whereabouts. He further advised that Kim Waldman had elected not to appear in court at the trial and that he was present essentially as an amicus curiae.

The pertinent facts are as follows:

On June 17, 1982 Mike and Kim Waldman filed a joint petition under Chapter 7 of the Bankruptcy Code. A trustee was appointed. The Waldmans attended the meeting of creditors under Section 341 of the Bankruptcy Code and apparently were examined by the Trustee. The Trustee filed a no asset report.

Amexco was listed as a creditor on the schedules in the amount of $20,000 for Kim Waldman and $20,000 for Mike Waldman and their card numbers were listed. Amexco received the usual form of notice of the § 341 meeting, which notice also provided that September 21, 1982 was the last date to object to discharge or to the dischargeability of any debt under Bankruptcy Code § 523(a)(4)(6) or (8), 11 U.S.C. § 523 et seq. On August 17, 1982, Amexco filed a proof of claim with the court in the amount of $78,413.88. This is the only proof of claim filed in the case.

The Waldmans appeared for their discharge hearing on October 29, 1982 and on December 26, 1982 the order of discharge was signed.

At trial Amexco offered into evidence the Waldman's account statement for the one-month billing period ending April 22, 1982. This statement shows new charges of $65,110.68 and a previous balance due of $1,692.59 for a new balance due of $66,803.27. The account statement consists of forty-six pages listing several hundred charges. A review of the charge slips themselves reveals that Kim Waldman purchased an airline ticket for New York to Vienna, Austria on March 12, 1982. On March 15, 1982, there are 21 charge slips from stores in Vienna signed by her that aggregate $4,500. The next day, March 16, she used her card to make 20 charges at stores in Vienna totalling approximately $4,700. Similar examples might be shown for Mike Waldman who apparently went to Europe a few days after his wife on the New York to London ticket he purchased on March 18, 1982. The buying spree continued elsewhere in Europe as well. The charges are generally several hundred dollars with a few larger charges for hotels or airfares. Both Waldmans signed the charge slips and there is no disproportionate number signed by one or the other. Trial testimony as to the history of their Amexco account prior to this month reflected that their average monthly bill was $1,500 or less.

The representative of Amexco who testified stated that as Amexco had the original of the April 22 statement that it evidently had been returned to it. However, Amexco's files do not contain the original of the May or June statements.

The only explanation Amexco has offered for its failure to act prior to December 27, 1982 is that it failed to recognize the "true nature of the charges incurred because the said charges had been incurred outside of the continental United States

---

1. Properly, the matter should have been commenced by the filing of a summons and complaint. See former Bankruptcy Rule 701. No objection to the form of the papers has been made on behalf of the debtors. In view of the court's decision, it does not need to reach the difficulty of entering judgment against an absent debtor when there is no proof of service of a summons.

and although the amount was known to a certain extent, the true nature of what transpired was unclear." Amexco Application at ¶ 5.

## CONCLUSIONS OF LAW

Amexco has failed to satisfy the requirements of Bankruptcy Code § 727(d), 11 U.S.C. § 727(d) to revoke the discharge granted to the Waldmans in that there has been no showing that the discharge was obtained through the fraud of the debtors or that Amexco did not know of the fraud until after the grant of the discharge. Further Amexco has failed to demonstrate that the debtors knowingly and fraudulently failed to report property or deliver it to the Trustee. There has been no showing that the debtors would have been denied a general discharge on a timely objection in that there is no showing that the debtors knowingly and fraudulently made a false oath.

Amexco is unable to show excusable neglect so as to warrant this court in extending the time for Amexco to object to the dischargeability of its debt. Were this court to permit the objection to be made now, the court would find that Amexco had established a prima facie case that its debt was nondischargeable under Bankruptcy Code § 523(a)(2)(A) in that Kim and Mike Waldman obtained money, property, services and extensions of credit by false pretenses, false representation or actual fraud since at the time they incurred the charges they knew that they could not in fact pay the charges incurred.[2]

## DISCUSSION

It is apparent that Amexco has sought to revoke the Waldmans' discharge because of Amexco's failure to file a timely complaint objecting to the dischargeability of its debt.

Discharge goes to the fundamental integrity of the bankruptcy process. While the schedules in this case fall far short in the way of details, there has been no showing that the debtors knowingly and fraudulently omitted any material information. It is, for example, not clear that, on June 1, 1982 when they swore to the petition, they had the actual Amexco bill and thus the aggregate of $40,000 may have been the best estimate in their minds of the aggregate owed. Nor do the purchases on their face seem to give rise to the inference that there are undisclosed assets beyond the clothing and furnishings claimed as exempt that a trustee could have liquidated for the benefit of creditors. See *In re Fischer,* 4 B.R. 517, 6 B.C.D. 465 (Bkrtcy.S.D.Fla.1980) (Debtor stated in petition that he was unemployed, which was false. However court found no reason for the lie and that a completely accurate response would not have affected the bankruptcy in any way. Therefore discharge granted since the false oath was not related to a material matter.)

Discharge and dischargeability are separate concepts. See *In re Koritz,* 2 B.R. 408, 6 B.C.D. 47 (Bkrtcy.D.Mass.1979) (Trustee's obtaining extension of time to object to discharge did not result in extension of time for a creditor to object to dischargeability of a particular debt.) A few cases fit nicely under both rubrics; the majority fit neatly only under one or the other. This case is a classic dischargeability case, and does not fit easily into the discharge rubric. See *In re Blewett,* 14 B.R. 840, 8 B.C.D. 502 (Bkrtcy.App. 9th Cir.1981) (Although complaint contained errors in terminology, it gave debtor adequate notice of the nature and basis of the claim and the type of litigation to be expected); and *In re Porter,* 7 B.R. 354, 7 B.C.D. 62 (Bkrtcy.E.D.Pa.1980) (Although complaint objected to discharge,

---

**2.** The burden of proof falls on the plaintiff. Amexco established a prima facie case by introducing the statement, showing the nature of the charges and the filing of the petition less than two months after the statement date showing both debtors as unemployed. Although the debtors might have an adequate explanation, it is not Amexco's burden to disprove all explanations. The debtors would have the burden to go forward and offer a credible explanation. Compare *In re Martin,* 698 F.2d 883, 10 B.C.D. 212, 216 (7th Cir.1983) ("It is clearly unsatisfactory to grant the debtor a discharge ... where the debtor 'stonewalls' the creditor and refuses to credibly explain to the court his puzzling or suspect transactions."); and *In re Amador,* 596 F.2d 428, 5 B.C.D. 188 (10th Cir.1979).

court found that no paragraph of the complaint set forth grounds for objection to discharge. Rather complaint alleged grounds for exception to discharge of a particular debt and court found that it would not be unfair to permit plaintiff to institute new complaint objecting to dischargeability.)

Unfortunately for Amexco, it has acted too late. The cases make it clear that the dates fixed by the court for dischargeability complaints should be rarely extended after their expiration as a matter of policy. The repose afforded to the debtors by their discharge should be disturbed only for compelling reasons. There has been no showing that the debtors were advised of the likelihood that Amexco would oppose the dischargeability of its debt, that the debtors failed to cooperate with the Trustee or that Amexco did not in fact have the ability to ascertain the basis of its nondischargeability claim. In fact, a quick account review should have triggered a question on the basis of a one-month bill of $65,000.

Evident non-merit may buttress a court's refusal to permit an untimely dischargeability complaint for excusable neglect. See *In re Sheerin*, 21 B.R. 438, 9 B.C.D. 491 (Bkrtcy.App. 1st Cir.1982) (Lower court considered merits of complaint in refusing to reopen case to permit objection to dischargeability.) Evident merit, however, as it appears in this case, is not relevant to a determination of excusable neglect. This court is not unmindful of the recent Circuit Court decision in *In re Magouirk*, 693 F.2d 948, 9 B.C.D. 1436 (9th Cir.1982), holding that a determination of excusable neglect requires analysis of prejudice to the parties and merits of the underlying claim. This court declines to follow *Magouirk*. The policy of determining a final cut-off date and insuring that debtors will be free of harassment after a date certain outweighs individual hardships that may be caused by rigid adherence to a rule. *Cf.* Bankruptcy Rules 4007(c) and 9006(b)(3) (the court may not enlarge the time for filing a complaint to determine dischargeability of a debt unless the motion to extend the time for filing is made prior to the expiration date.).

Amexco knew of the proceeding. It filed a proof of claim almost a month before the bar date. The information was then available to it on which to predicate a decision, particularly as the key statement, the April 22 statement was then four months old. Creditors who are regularly credit extenders can protect their rights to nondischargeability determinations only by creating an appropriate internal mechanism to spot and act in a timely fashion.

The finding of excusable neglect is left to the facts of each case. The cases make clear that in general such a finding should be based on

> "the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform." *In re Parrish*, 13 B.R. 539, 8 B.C.D. 285, 286 (Bkrtcy.W. D.Ky.1981).

Law office failure has been deemed insufficient to justify granting a motion for leave to file a complaint five days after the deadline fixed of which the creditor had actual knowledge. *See In re Parrish, supra; In re Figueroa*, 33 B.R. 298 (Bkrtcy.S.N.D.Y. 1983) (Buschman, B.J.) (Forty-day delay not excused.) *Accord, In re Hamman*, 14 B.R. 172, 8 B.C.D. 96, 97 (Bkrtcy.S.D. Ohio 1981) (Seven days late. "Compliance with filing dates *must* be enforced unless there are matters of great importance that require relief. * * * Carelessness does not justify relief.")

The motion of Amexco is denied. The order of discharge stands and the claims of Amexco have been discharged.

SO ORDERED.