**In re Cynthia M. VEGH, Debtor.**

**SOUTHEAST SERVICES, INC., a Florida Corporation, Plaintiff,**

v.

**Cynthia M. VEGH, Defendant.**

**Bankruptcy No. 81–00206–BKC–SMW. Adv. No. 81–0254–BKC–SMW–A.**

United States Bankruptcy Court, S. D. Florida.

Aug. 21, 1981.

Britton, Cohen, Kaufman, Benson & Schantz, Miami, Fla., for plaintiff.

Houston, Faircloth, Easthope & Traver, Ft. Lauderdale, Fla., for defendant.

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on to be heard upon a creditor's complaint, objecting to the dischargeability of a debt. This Court having heard the testimony of witnesses and having examined the evidence presented, having observed the candor and demeanor of the witnesses, having considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

Plaintiff, SOUTHEAST SERVICES, INC. ("Southeast") filed an adversary proceeding against the Defendant/Debtor, CYNTHIA M. VEGH ("Vegh") seeking a money judgment in the amount of $34,573.18, and a determination that the debt is non-dischargeable pursuant to 11 U.S.C. Sec. 523(a)(2)(A), in that Vegh obtained money in the form of an extension of credit from Southeast by false pretenses, false representation, and actual fraud. Vegh answered, denying the material allegations of the Complaint, and the matter was tried before this Court on June 24, 1981.

The material facts are undisputed. Southeast issued to Vegh two credit cards, a Master Card having a credit limit of $800.00, and a Visa Card having a credit limit of $400.00. For more than one year, Vegh made regular monthly payments and stayed within her credit limit on each card. During the month of August 1980, however, Vegh, a young unemployed single woman, used the two credit cards to make 617 separate purchases of items for her personal use, aggregating more than $24,000.00. Each of those 617 purchases was in an amount less than $50.00. By the time Vegh filed a voluntary petition in this Court, she owed Southeast $34,573.18. Vegh admitted at trial that she knew the credit limit on each of her cards, and that she knew in August 1980, she was well in excess of those limits; but attributed these over-the-limit charges to a lack of self-control, exacerbated by a drinking problem.

Southeast bases its claim that the full debt owed by Vegh is non-dischargeable on the theory that it is the victim of a systematic scheme of false and fraudulent representation by Vegh. Credit card cases such as this one clearly fall within the rubric of false pretenses and actual fraud sufficient to except a debt from discharge pursuant to 11 U.S.C. Sec. 523(a)(2)(A). Both the rationale underlying that conclusion and the applicable test for non-dischargeability have been recently summarized as follows:

> Purchase of merchandise by use of a credit card is an implied representation to the merchant and to the issuer of the card, that the buyer has the means and the intention to pay for the purchase. *In re Cushingberry*, 5 B.C.D. 954 (E.D.1977); *In re Boydston*, 520 F.2d 1098 (5th Cir. 1975); *In re Black*, 373 F.Supp. 105 (E.D.

Wis.1974). Accordingly, when one purchases goods on credit and either knows that he is unable to comply with the payment requirements of his contract with the card issuer, or when it appears from the evidence that he had no intention to pay for them, he obtains the goods through false pretenses which constitutes a form of fraud on the creditor. *In re Banasiak*, 8 B.R. 171, 174 (Bkrtcy.M.D. Fla.1981).

The burden thus falls on Southeast to show that Vegh obtained money and credit from Southeast by materially false or fraudulent misrepresentations in that she presented the credit card to merchants and made purchases on credit when she, in fact, lacked both the means and the intent to pay for them, and that Southeast relied on such false or fraudulent representations. *See, In re Banasiak*, 8 B.R. 171 (Bkrtcy.M.D.Fla. 1981); *In re Ratajczak*, 5 B.R. 583 (Bkrtcy. M.D.Fla.1980); *In re Perticaro*, 5 C.B.C. 664 (E.D.N.Y.1975).

Southeast, as Plaintiff, has met its burden with clear and convincing proof, which Vegh has failed to overcome. On the evidentiary record, this Court is satisfied that Vegh lacked the ability and the intent to pay Southeast for her various credit card purchases, and that she thus obtained money or property or services by false pretenses.

Clearly, Congress intended, in enacting the Bankruptcy Code, that an honest debtor might be relieved of his debts and obtain a fresh start by a Bankruptcy discharge. This is not, however, a case involving an honest debtor. Rather, the evidentiary record depicts a conscious and willful scheme, contrived and executed by Vegh to defraud Southeast. That fraudulent scheme manifests itself in several obvious ways. First is magnitude: Vegh averaged 20 purchases a day, and in a one-month period, managed to amass purchases totalling nearly twenty times her aggregate credit limit on the two cards, a sum which dwarfed by comparison her then virtually non-existent income. Such a gross disparity between the amount of debt and the means to pay, negatives both ability and intent to pay.

Even more telling, however, is Vegh's consistent practice in more than 600 purchases during a one-month period of never exceeding $50.00 per purchase. This can hardly be fortuitous, for the $50.00 figure has special significance in the context of credit card purchase transactions. Testimony at trial establishes that, in accordance with the contractual relationship between Southeast and merchants accepting its credit cards, a merchant has no duty to inquire as to the validity, status or good standing of a credit card offered to purchase goods or services priced under $50.00. On purchases below that amount, Southeast and not the merchant, bears the risk of loss, hence a merchant does not usually verify credit on such transactions, a fact well known to consumers. Faced with a debtor who has used the same two credit cards to make more than 600 purchases in a one-month period without ever exceeding $50.00, this Court must infer that such a pattern of conduct is consistent only with a scheme of actual fraud and false representation. *See, In re Reinhart*, 1 B.C.D. 666 (E.D.Va.1975); *See also, In re Whitehead*, 1 B.C.D. 1647 (D.Utah 1976).

In the face of such overwhelming evidence of fraud and false representation, the matters raised by Vegh in defense of her conduct are of little moment. Vegh's testimony that she was not in control of herself and under the influence of alcohol is unconvincing, and even if true, is without legal significance. In a similar case, one Bankruptcy Court has expressly rejected expert psychiatric testimony concerning a debtor's mental instability, along with evidence that the same debtor had been treated in a mental alcoholic rehabilitation center. *In re Banasiak, supra.* Here the record is without expert testimony as to Vegh's mental condition during the relevant period. Moreover, Vegh executed her fraudulent scheme of multiple purchases, all under $50.00, with a disciplined consistency which belies a claim that her conduct was induced by intoxication or mental instability.

Vegh also contends by way of defense, that Southeast failed to take timely action either to notify her that she had exceeded her credit limit or to revoke her credit cards. This defense, too, must fail. There is substantial and convincing evidence that Southeast did, in fact, timely notify Vegh by use of computer form letters that she had exceeded her limits. Whether or not Southeast was negligent, however, as to notification or revocation of Vegh's cards, such negligence is not a legally sufficient defense. In *In re Reinhart, supra,* the Bankruptcy Court was faced with a similar scheme of multiple credit card purchases all under $50.00. The Debtor had exceeded $5,000.00 in charges against a $1,000.00 limit. Although the creditor bank was "noticeably negligent in handling its account", the Court nevertheless held the debt non-dischargeable, noting,

"There are few cases where the actions of a Bankrupt are as blatant and fraudulent as those of the bankrupt here. The Bankruptcy Act should be construed to prevent the discharge of a liability which would not exist but for the fraudulent conduct of the Bankrupt.

. . . .

Nothing the Bank did justified or excused what she (the bankrupt) did." *In re Reinhart, supra,* 1 B.C.D. at 667.

This Court, faced with a grander and more ambitious scheme to defraud a creditor, must take the same view. Accordingly, this Court holds that Vegh is indebted to Southeast in the amount of $34,573.18, and that this debt is excepted from Vegh's discharge in accordance with 11 U.S.C. Sec. 523(a)(2)(A).