In re Arnold P. **GRIFFIS** and Christine H. **Griffis** a/k/a Christine H. **Webb**, doing business as Arlington Custom Kitchen, Debtors.

**CHITTENDEN TRUST COMPANY, Plaintiff,**

v.

Arnold P. **GRIFFIS** and Christine H. **Griffis** a/k/a Christine H. **Webb**, doing business as Arlington Custom Kitchen, Defendants.

Bankruptcy No. 82–282.
Adv. No. 83–0015.

United States Bankruptcy Court, D. Vermont.

March 22, 1983.

Harold J. Gilbar, Jr., Bennington, Vt., for creditor.

### MEMORANDUM AND ORDER

**CHARLES J. MARRO,** Bankruptcy Judge.

This is an adversary proceeding predicated on § 523(a)(2)(A) of the Bankruptcy Code to determine dischargeability of debt.

The Debtors filed their Petition for Relief under Chapter 7 of the Bankruptcy Code on December 21, 1982. The Chittenden Trust filed its Petition for Exception to Discharge on February 2, 1983, and the matter came on for trial on March 14, 1983. On the basis of the evidence and the testimony submitted by the parties, the Court now makes its findings and conclusions.

The gravamen of the Plaintiff's complaint is upon a series of retail purchases of merchandise by the Debtor through the use of a Master Card credit card issued by the Plaintiff. The Chittenden contends that the actions of the Debtor relating to the use of the credit card constitute fraud within the parameters of § 523(a)(2)(A) of the Bankruptcy Code.

## FINDINGS

In December 1981, the Chittenden Trust Company gave its approval for the opening of a Master Card account upon the request of Arlington Custom Kitchens. The personal guarantors for the account were Arnold Griffis and Philip H. Bahan. In notifying the Debtor of the approval of the account for Arlington Custom Kitchens, the Chittenden indicated that the account was assigned a credit limit of $1000.00. From January 1982 through August 1982, it appears that there were no significant problems with the account.

In September 1982, the Debtor's Master Card account was brought to the attention of Gary Ladabouche, Credit Card Collector for the Chittenden Trust, since the account balance exceeded the assigned credit limit. On September 10, 1982, the Chittenden sent a letter to Arnold Griffis advising him that the balance of the account exceeded the $1000.00 credit limit, and that the use of the card should be restricted until the balance was again below the credit limit. The account balance as of the September 7th statement was in the amount of $1254.68. However, the statement appeared to contradict the letter by requesting a minimum payment of only $62.72. The Court further notes that the August balance was in the amount of $1233.93, however, no action was taken by the Chittenden prior to the September letter.

On September 27, 1982 and October 5, 1982 the Debtor made payments of $254.48 and $62.72, respectfully. These payments, as reflected in the October statement, reduced the account balance to $993.30. However, the Debtor's account balance again exceeded the $1000.00 credit limit in November, and remained above the limit through the filing of the Petition.

On November 29, 1982, the Chittenden notified the Debtor that unless the balance was reduced to within the credit limit, the account would be closed and the privileges revoked. The Debtor made no payments after October 5, 1982, nor any in response to the Chittenden's letter of November 29th. However, it appears to the Court that the Debtor had intended to pay on the account at the time the purchases were made.

The Debtor's account for the months of November and December of 1982 reflected purchases and balances as follows:

### NOVEMBER STATEMENT
closing date 11/4/82

| Date of transaction | Charges | Amount |
| --- | --- | --- |
| 9/15 | Mobil Oil | 13.00 |
| 10/15 | Gaynes, Inc. | 61.30 |
| 10/5 | Casa Romano | 39.73 |
| 10/11 | Holiday Inn | 68.15 |
| 10/26 | Blue Fox Tavern | 12.45 |
| | Finance charges | 17.47 |
| | Balance | 1218.90 |

### DECEMBER STATEMENT
closing date 12/6/82

| | | |
| --- | --- | --- |
| 10/28 | Sun Oil | 14.00 |
| 10/16 | Sun Oil | 10.70 |
| 10/25 | Sun Oil | 14.00 |
| 11/2 | Chem-clean Mobil | 14.40 |
| 11/28 | Chem-clean Mobil | 16.00 |
| | Finance charges | 20.07 |
| | Balance | 1308.07 |

### JANUARY STATEMENT
closing date 1/6/83

| | | |
| --- | --- | --- |
| 11/25 | Getty Refining | 25.00 |
| 12/3 | Chem-clean Mobil | 14.75 |
| 12/1 | Chem-clean Mobil | 15.25 |
| 11/30 | Blue Fox Tavern | 21.59 |
| 12/9 | Chem-clean Mobil | 13.00 |
| 12/2 | Cobblestone Inn | 19.25 |
| | Finance charges | 16.93 |
| | Balance | 1437.84 |

The Court further notes that the Debtor has appeared pro se in the instant proceeding, and that the Petition for Relief, as filed on December 21, 1982, indicates no attorney of record.

## CONCLUSIONS

Section 523 of the Bankruptcy Code states in pertinent part:

(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—. . .

(2) for obtaining money, property, services, or extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition. . .

■ It is well established that the type of fraud dealt with in Section 523(a)(2) is actual fraud and requires intentional wrong involving moral turpitude. *In re Stewart*, 7 B.R. 551 (Bkrtcy.M.D.Ga.1980). Section 523(a)(2) is substantially the same as former § 17(a)(2) of the Bankruptcy Act, as to dischargeability, and therefore, in order to sustain a claim of nondischargeability under § 523(a)(2) the following must be established: (1) that the Debtor made a materially false representation; (2) that the representation was made with the intent to defraud, and (3) that the Bank relied on the false misrepresentation. *Matter of Banasiak*, 8 B.R. 171 (Bkrtcy.M.D.Fla.1981). The burden of proving each of these elements is upon the party seeking to come within the statutory exception to discharge, and this must be proven by clear and convincing evidence. *In re Stewart, supra.*

In considering the element of representation the Court in *Matter of Banasiak* stated at 174:

Purchases of merchandise by use of a credit card is a implied representation to the merchant and to the issuer of the card, that the buyer has the means and the intention to pay for the purchase. *In re Cushingberry*, 5 B.C.D. 954 (E.D.1977); *In re Boydston*, 520 F.2d 1098 (5th Cir. 1975); *In re Black*, 373 F.Supp. 105 (E.D.

Wis.1974). Accordingly, when one purchases goods on credit and either knows that he is unable to comply with the payment requirements of his contract with the card issuer, or when it appears from the evidence that he had no intention to pay for them, he obtains the goods through false pretenses which constitute a form of fraud on the creditor.

In the instant case, it may be assumed that such an implied representation was made every time the Debtor used his Master Card to obtain goods and services. However, it is the element of the intent to defraud that must carefully be considered in the instant case. The Plaintiff relies upon the factors recited in *In re Stewart*, 7 B.R. 551 (Bkrtcy.M.D.Ga.1980), for proving an intent to defraud. In *Stewart*, the Court stated:

Intention of course is a very subjective thing and in most instances can only be shown circumstantially. Nonetheless, if appropriate factors are shown the Court, this intention may be established. Factors for which to look are:

1. the length of time between the charges made and the filing of bankruptcy.

2. whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges are made;

3. the number of charges made;

4. the amount of charges;

5. the financial condition of the debtor at the time the charges are made, and;

6. whether the charges were above the credit limit of the account.

■ In applying the above factor to the instant case, and after reviewing the decisions of courts which have considered the factors, it is exceedingly clear that the Debtor in the instant case did not have the necessary intent to defraud.

In the instant case, the number of charges and the time that such charges were made prior to the filing of the petition do not evince proof of wrongdoing or fraud. In fact, the number of charges and the nature of such charges for October, Novem-

ber and December show that the Debtor maintained the same course of business as he had in the prior months.

 Generally, a finding of nondischargeability occurs when the number of charges exhibit a buying spree in contemplation of bankruptcy. *In re Wright,* 8 B.R. 625 (Bkrtcy.S.D.Ohio.W.D.1981). See also, *In re Vegh,* 14 B.R. 345 (Bkrtcy.S.D.Fla. 1981); (Vegh averaged 20 purchases a day, and in a one month period, managed to amass purchases totalling nearly twenty times her aggregate credit limit on two cards.) However, dischargeability will not be denied where there is no evidence that the credit was used on the eve of bankruptcy *unusually* or in contemplation of defaulting in payments or filing bankruptcy. See *The Winters National Bank and Trust Co. v. Robert N. Smith,* 1 B.C.D. 1630 (1975), as cited in *Wright.*

There was no buying spree by the Debtor herein, nor was the card unusually used just prior to the filing of the petition. Therefore, these factors cannot be relied upon to prove fraudulent intent.

The instant Debtor appears pro se and the petition for relief shows no attorney of record. There has been no evidence presented that the Debtor consulted an attorney prior to the petition, as to make the final charges in contemplation of bankruptcy. As such, this factor also is inapplicable to the instant case. However, this factor has been probative in other cases when a buying spree exists. *In re Ratajczak,* 5 B.R. 583 (Bkrtcy.M.D.Fla.1980); *In re Ciavarelli,* 16 B.R. 369 (Bkrtcy.E.D.Pa.1982); *In re Schneider,* 3 B.C.D. 175 (Bkrtcy.D. Nev.1977); *In re Turner,* 23 B.R. 681 (Bkrtcy.D.Mass.1982).

The Plaintiff has attempted to prove that the Debtor had the intent to defraud by a fraudulent scheme. This scheme was asserted to arise by the amount of the Debtor's purchases. The Plaintiff argues that the Debtor intentionally limited each purchase to under $50.00 as to prevent the retail merchant from making a credit check on the Debtor's account. There is no question that the Debtor's last purchase exceed-

ing $50.00 was on October 15, 1982, over two months prior to the petition. However, nine of the twelve purchases between October 15, 1982 and December 21, 1982 appear to be for motor fuel. As such, a charge of less than $50.00 per purchase at a service station appears to the Court to be more within the ordinary course rather than the exception, although much to the chagrin of OPEC.

An inference of fraudulent intent can be drawn from a series of purchases in which the purchase amount is below the amount that a merchant would check a credit limit. See *In re Nolan,* 1 B.R. 644 (Bkrtcy.M.D. Fla.1979); *In re Stewart,* 7 B.R. 551 (Bkrtcy.M.D.Ga.1980); *In re Vegh,* 14 B.R. 345 (Bkrtcy.S.D.Fla.1981); *In re D'Amico,* 1 B.R. 170 (Bkrtcy.W.D.N.Y.1979). However, such an inference should not be drawn, without more, when the purchases are not unusual or for necessaries. In the instant case, the Court finds no intent to defraud based on this factor, nor any basis to draw such an inference.

There has been no evidence concerning the Debtor's financial condition other than that as shown within the Debtor's schedules. Therefore, the final factor to be considered is the credit limit on the Debtor's account.

Several courts have held that in order for a debt to be found nondischargeable, something more than exceeding a credit limit must be shown. *In re Victorian,* 8 B.R. 196 (Bkrtcy.N.D.Ohio W.D.1981); *In re Wright,* 8 B.R. 625 (Bkrtcy.S.D.Ohio W.D.1981); *In re Green,* 14 B.R. 13 (Bkrtcy.W.D.Ky.1981); *In re Poteet,* 12 B.R. 565 (Bkrtcy.N.D.Tex. 1981). Although there is authority to the contrary. *In re Curcio,* 1 B.R. 727 (Bkrtcy. E.D.Mich.1979); *In re Schartner,* 7 B.R. 885 (Bkrtcy.N.D.Ohio 1980). This Court has previously held that something more than merely exceeding a credit limit must be shown before a debt will be nondischargeable. *In re Hermann,* Case No. 79–00146 (Bkrtcy.D.Vt. October 10, 1980). This is especially true where there is tacit approval of charges exceeding the limit.

In the instant case, the Debtor exceeded the credit limit of $1000.00 during the statement months of August, September, November, December and January. (January statement containing pre-petition charges.) The Plaintiff advised the Debtor on two occasions to limit the use of his card, however, the Plaintiff did not request the Debtor to return the card prior to the petition for relief. This Court believes that the instant case, like *Hermann*, does not warrant a finding of fraudulent intent.

In view of the foregoing, it is not necessary to consider the element of reliance since the element of intent has not been proven.

### ORDER

Now, upon the foregoing:

IT IS ORDERED:

1. That the Plaintiff's Complaint for exception of debt from discharge is DISMISSED.