**In re Linda S. DAVIS, Debtor.**

**BANK OF VIRGINIA, Plaintiff,**

v.

**Linda S. DAVIS, Defendant.**

**Bankruptcy No. 83–00110–A.**
**Adv. No. 83–0209–A.**

United States Bankruptcy Court, E.D. Virginia.

Sept. 26, 1984.

194, 199 (Bankr.D.Kansas 1983).

Morris Schwarzman, Fairfax, Va., for debtor.

Nolan B. Dawkins, Alexandria, Va., for creditor.

Henry Counts, Jr., Alexandria, Va., for trustee.

### SUPPLEMENTAL FINDINGS AND CONCLUSION PURSUANT TO REMAND OF MARCH 2, 1984

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

This matter arises out of a complaint filed by the Bank of Virginia ("the Bank"), creditor herein, to determine the dischargeability of a debt under section 523(a)(2)(A) of the Bankruptcy Reform Act of 1978 ("the Code").

Debtor filed her petition in bankruptcy under Chapter 7 of the Code on January 28, 1983. The debt, in the amount of $3,017.44, arose from charges debtor made on a Mastercard credit card issued to her by the Bank in July 1982. After a hearing held in this matter on September 21, 1983, this Court found $1,017.44 of the debt to the Bank nondischargeable. Pursuant to debtor's appeal, the United States District Court for the Eastern District of Virginia remanded the case for a finding as to "whether, at the time the debtor made purchases in excess of her credit limit, she lacked an intent to pay for them."

Linda S. Davis ("Davis"), debtor herein, received an unsolicited invitation from the Bank to apply for a Mastercard credit card in July 1982. Davis applied for and received a credit card which she put into use during the last days of that month. Davis' credit limit on the card was $2,000.00. Debtor proceeded to use the card regularly

over the next five months. During that period of time, debtor's monthly charges ranged from $326.98 in August to $683.90 in December. The highest monthly billing was $808.07. When debtor ceased using her card in December 1982, the total debt to the Bank, including past due fees and overlimit charges, was $3,017.44.

Davis remained current on making her minimum balance due payments on her first three billing statements. The payment due date on the third statement was November 10, 1982. These three payments were received August 20, 1982, October 8, 1982 and November 9, 1982.

Evidence adduced at the September 1983 hearing indicated that debtor's income was about $24,000.00 per year during the relevant time period. Additionally, although debtor's husband was unemployed, he was receiving substantial social security payments and Veteran's Administration benefits. Although debtor and her husband had become separated, Davis' husband was making payments on several of the joint debts of the couple. Aid from the husband on these debts terminated in late November or early December 1982. Debtor indicated it was during that period that she became concerned about her financial condition. Debtor first consulted an attorney regarding the possibility of filing a petition in bankruptcy in January 1983 and, in fact, filed the liquidation petition later that same month.

The Bank has filed its complaint to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) exempts from a discharge under section 727 any debt incurred in obtaining goods and services by way of "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). In its complaint, the Bank alleged that debtor knew or should have known that she was insolvent at the time she incurred the debt and that she had no intent of paying off the debt.

Generally, in order for a debt to be rendered nondischargeable under 11 U.S.C. § 523(a)(2), the objecting creditor must show the existence of the following elements: (1) the debtor made the representations; (2) the debtor knew they were false; (3) the debtor made them with the intention of deceiving the creditor; (4) the creditor relied on the representations; and (5) the creditor was damaged as a result of the representations having been made. *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967); *In re Holt*, 24 B.R. 696, 698 (Bankr.E.D.Va.1982). The objecting creditor must prove the existence of these elements by clear and convincing evidence. *Brown v. Buchanan*, 419 F.Supp. 199, 202 (E.D.Va.1975) and cases cited therein.

A court's analysis of the dischargeability of a debt incurred through the use of a credit card must be adjusted, however, to accommodate the special nature of the transaction. As a result, several courts have held that with the use of his card a credit card holder represents he has both the ability and the intention to pay for the goods and services and that the credit card issuer relies on those implied representations in extending credit. *Matter of Buford*, 25 B.R. 477, 481–82 (Bankr.S.D.N.Y.1982); *In re Vegh*, 14 B.R. 345, 346–47 (Bankr.S.D.Fla.1981); *In re Schnore*, 13 B.R. 249, 257 (Bankr.W.D.Wis.1981); *In re Poteet*, 12 B.R. 565, 567–68 (Bankr.N.D.Tex.1981); *In re Pitts*, 10 B.R. 557, 559 (Bankr.M.D.Fla.1981); *In re Brewster*, 5 B.C.D. 783, 785 (Bankr.E.D.Va.1979). In the instant case, debtor impliedly represented to the Bank by numerous uses of her credit card that she had both the ability and the intention to pay for her purchases.

This Court must now determine whether, at the time of making the purchases, debtor did not intend to pay for the goods and services procured. Factors relevant in establishing the existence or nonexistence of an actual intent to deceive were enunciated in *In re Stewart*, 7 B.R. 551, 555 (Bankr.M.D.Ga.1980), and were discussed in *In re Satterfield*, 25 B.R. 554, 557–58 (N.D.Ohio 1982). It is to *Satterfield* that the District Court has directed our attention. The relevant factors are: (1) the length of time

between the charges made and the filing of bankruptcy; (2) whether an attorney has been consulted concerning the filing of bankruptcy prior to the charges being made; (3) the number of charges made; (4) the amount of the charges; (5) the financial condition of the debtor at the time the charges were made; and (6) whether the charges were above the credit limit of the account. *Id.* Additionally, although there is a split in authority, the better view appears to be that a debtor's exceeding the credit limit is not *ipso facto* an intent to defraud. *Compare In re Wright,* 8 B.R. 625, 628 (Bankr.S.D.Ohio 1981) (exceeding credit limit only one factor relevant to determination of intent) *and In re Parker,* 1 B.R. 176, 179 (Bankr.E.D.Tenn.1979) (same) *with In re Schartner,* 7 B.R. 885, 887–88 (Bankr.N.D.Ohio 1980) (purchases made in excess of credit limit constitute obtaining property by false representations) *and Matter of Curcio,* 1 B.R. 727, 728 (Bankr. E.D.Mich.1979) (exceeding credit limit constitutes obtaining property by false representations under § 17a(2) of former Bankruptcy Act).

During the prior hearing in the instant matter, this Court found that the evidence did not indicate that the debtor should have known that she would not be able to make payments to the Bank. The debtor's husband had been making payments on a substantial number of the joint debts. Debtor did not become aware of her husband's failure to continue making payments until she was notified of a default judgment entered against her and her husband in favor of a joint creditor in late November or early December 1982. Debtor did not consult an attorney regarding filing a bankruptcy petition until January 1983. Furthermore, debtor's final use of the

Mastercard was December 26, 1982, a month prior to the filing of the bankruptcy petition.

The debtor's pattern of using her credit card does not indicate she lacked an intent to pay. Debtor received her card in July 1982 and made charges totaling $80.52 that month. Her charges on the Mastercard for the succeeding five months, August through December 1982, were: $326.98 (August); $661.44 (September); $808.07 (October); $426.97 (November); and $683.90 (December). Clearly, debtor did not exhibit any great increase in purchasing activity prior to filing bankruptcy. Additionally, debtor ceased using her card in December 1982, prior to her initial consultation with an attorney regarding the possibility of filing a bankruptcy petition. There is no evidence that debtor ceased using the card on other than a voluntary basis.

Debtor paid her first three minimum amounts due as she was required in accordance with the billing statements. Her last payment of the minimum due amount of $51.06 was received on November 9, 1982. Additionally, several of the purchases were in excess of the so-called "bench-mark" of $50.00 [1]. Such a buying pattern is in conflict with debtor harboring an intent not to pay.

Creditor cites as authority *In re Ciavarelli,* 16 B.R. 369 (E.D.Pa.1982), asking that this Court infer a lack of an intent to pay on the debtor's part. In *Ciavarelli,* the debtor charged over $1,200.00 in goods and services in two days. *Id.* at 370. The two days were within two weeks of a significant reduction in the salary of debtor's husband and within three weeks of the time debtor filed her petition in bankrupt-

---

**1.** Several courts have used the amount of individual purchases as an indicator of fraudulent intent. *See e.g., In re Vegh,* 14 B.R. 345, 347–48 (Bankr.S.D.Fla.1981); *In re Poteet,* 12 B.R. 565, 569 (Bankr.N.D.Tex.1981). A number of credit card issuers require merchants to obtain authorization for a single charge in excess of $50.00. Courts have inferred an intent to conceal charges in excess of a credit limit or an intent to deceive based on a debtor's practice of spread-

ing large purchases over a number of drafts. *See, e.g., In re Schartner,* 7 B.R. 885, 887 (Bankr. N.D.Ohio 1980); *Matter of Stewart,* 7 B.R. 551, 555 (Bankr.M.D.Ga.1980); *In re Roberta Annette Reinhart,* 1 B.C.D. 666, 666 (Bankr.E.D.Va. 1975); *but see In re Satterfield,* 25 B.R. 554, 559 (Bankr.N.D.Ohio 1982) (credit charges of less than $50.00 alone do not indicate intent to deceive).

cy. *Id.* In over a two-year period prior to debtor filing her petition, debtor had never made any monthly purchase, after payments, in excess of $150.00. *Id.* The *Ciavarelli* court found the debt nondischargeable, stating it found the debtor's testimony incredible when she testified she was unaware of the imminent cut in her husband's salary. *Id.* at 371.

The fact situation in the case at bar distinguishes it from *Ciavarelli.* In the instant case, debtor and her husband were living apart and had been for some time. Although the income of debtor's husband was fixed, he was living with his parents. Mr. Davis was paying on a large portion of the joint debts and had been for some time. Debtor's testimony is not incredible when she indicates she had no warning that her husband would stop paying on the debts for which they were both liable. Additionally, as has been indicated above, debtor did not indulge in a shopping spree. Although debtor's charges were substantial, averaging in excess of $580.00 per month for the final five months she used the card, she had a good income and her regular monthly liabilities were reduced significantly by her husband's contribution. Although Mrs. Davis' reliance on her husband's continuing support may have been unwise, that reliance is not synonymous with a lack of intent to pay for the debts incurred.

Although debtor testified that she should have known in November 1982 that she had less than $200.00 of credit available, debtor did incur charges in the amount of $683.90 in the month of December. Overreaching the credit limit, however, is insufficient to infer an intent not to pay. *In re Satterfield,* 25 B.R. 554, 560 (Bankr.N.D.Ohio 1982); *In re Lyon,* 8 B.R. 152, 154 (Bankr.D.Me.1981). As a result of the foregoing, this Court is unable to find that at the time the debtor made the purchases in excess of her credit limit, she lacked an intent to pay for them.

Accordingly, the entire debt to the Bank, including the $1,017.44 incurred in excess of debtor's credit limit, is dischargeable

and the appropriate Order amending the original judgment will be entered.