**In re Jeffrey Thomas SHRADER, Deborah Sue Shrader, Debtors.**

**DOMINION BANKSHARES SERVICES, Plaintiff,**

v.

**Jeffrey Thomas SHRADER, et ux., Defendants.**

**Bankruptcy No. 7–85–00419–A. Adv. No. 7–85–0147.**

United States Bankruptcy Court, W.D. Virginia, Abingdon Division.

Dec. 5, 1985.

Zane Dale Christian, Bluefield, Va., for debtors/defendants.

Browning, Morefield & Schelin, Abingdon, Va., for plaintiff.

Michael A. Bragg, Bristol, Va., Trustee.

### MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue before the Court is whether the debt arising from use of a VISA credit card is nondischargeable pursuant to 11 U.S.C. § 523(a)(2).

The only evidence before this Court is the testimony of the Debtors and the documents submitted by the Bank. The facts, briefly stated, are as follows. Approximately three years ago, the Debtor, Debra Shrader, completed an application to obtain a VISA credit card through Plaintiff, Dominion Bankshares ("Dominion"). At the time, she was employed as an X-ray technician at a local hospital. Dominion issued the card in the name of Debra Shrader, with a credit limit of $700.00. Her husband, Jeffrey Shrader, also had authority to make purchases with the card.

Copies of monthly VISA billing statements for 1984 and 1985 were introduced into evidence by Counsel for Dominion. The statement with a closing date of November 19, 1984 indicated a balance of $604.09, reflecting a payment of $40.00 on the account during the month. The December, 1984 statement showed a balance of $744.41. In addition to itemized charges, this statement reflected a payment of $25.00 on the account, as well as an "over-limit fee" of $10.00 charged to the account on December 4, 1984. The statement also

contained an announcement that the Debtors could skip a payment on the balance of the account for the month, even though at that time the account was overdue. Other than the $10.00 "over-limit fee", there was no mention of the limit having been exceeded.

Further charges were made on the account, and the statement dated January 18, 1985 reflected a balance of $905.92. This statement likewise included another $10.00 "over-limit fee". The statement noted that the balance was in excess of the credit limit, but simply requested that no further charges be made until the situation was resolved.

On January 29, 1985, Shrader wrote to Dominion indicating that she had been on maternity leave from work and would not return until March. Due to the family's monthly living expenses, Shrader informed the bank that she would not be able to make the minimum monthly payments at the present time, but would resume payment as soon as possible.

The March, 1985 billing statement showed a closing balance of $1,069.56, including an additional $10.00 "over-limit fee". The statement also contained the words "Your account is delinquent, please remit immediately." Shrader testified that she was not aware that these monthly balances were in excess of the credit limit and that she did not read the statements completely. When these statements arrived with the couple's other bills, Shrader stated that she would simply look at the balance owed and make some payment on the account.

The Debtors filed their Chapter 7 petition in this Court on April 16, 1985. Subsequent to the filing of the petition, Dominion sent a letter to the Shraders requesting return of the VISA card, which was returned. The final balance reflected on the June, 1985 statement is in the amount of $1,135.38. Dominion contends that this debt should be nondischargeable under § 523(a)(2)(A).

Section 523(a)(2)(A) provides that "A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud ..."

The burden of proving objections to discharge is on the Plaintiff. *Rule* 4005, *Federal Rules of Bankruptcy Procedure.* The objections to discharge in § 523 are to be strictly construed against the objecting creditor and liberally in favor of the Debtor. 3 *Collier on Bankruptcy,* ¶ 523.05A at 523–15 (15th ed. 1985). *See also Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Roberts v. Ford,* 169 F.2d 151 (4th Cir.1948); *Royal Indemnity Co. v. Cooper,* 26 F.2d 585 (4th Cir.1928). The rationale for this strict construction is to give debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); *Local Loan Company v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Lewis v. Roberts,* 267 U.S. 467, 45 S.Ct. 357, 69 L.Ed. 739 (1925); *Williams v. United States Fidelity & Guaranty Company,* 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915).

It is fundamental under our system of jurisprudence that fraud is never presumed and he who alleges it must prove same by clear, cogent, and convincing evidence. *Gleason v. Thaw, supra.*

In order for a debt to be rendered nondischargeable under § 523(a)(2), the objecting creditor must show the existence of the following elements: (1) The debtor made the representations; (2) The debtor knew they were false; (3) The debtor made them with the intention of deceiving the creditor; (4) The creditor relied on the representations; and (5) The creditor was damaged as a result of the representations having been made. *Sweet v. Ritter Finance Co.,* 263

F.Supp. 540, 543 (W.D.VA 1967); *In re Holt*, 24 B.R. 696, 698 (Bankr.E.D.VA 1982). Proof of the elements of § 523(a)(2)(A) must be by clear, cogent, and convincing evidence. *In re Satterfield*, 25 B.R. 554 (Bankr.N.D.OH 1982) and the cases cited therein. *See also Brown v. Buchanan*, 419 F.Supp. 199, 202 (E.D.VA 1975); *Sweet v. Ritter Finance Co., supra*, at 540.

■ The purchase of goods through the use of a credit card is an implied representation to the merchant and the issuer of the card that the buyer has the means and the intention to pay for them. *In re Boydston*, 520 F.2d 1098 (5th Cir.1975); *In re Satterfield, supra*, at 557; *In re Black*, 373 F.Supp. 105, 107 (E.D.WI 1974); *In re Ciavarelli*, 16 B.R. 369 (Bankr.E.D.PA 1982); *In re Vegh*, 14 B.R. 345 (Bankr.S.D.FL 1981); *In re Schnore*, 13 B.R. 249 (Bankr. W.D.WI 1981); *In re Brewster*, 5 B.C.D. 783, 785 (Bankr.E.D.VA 1979). The important consideration in dischargeability cases under § 523(a)(2) involving credit cards is whether the debtor knew or should have known that he would not be able to pay for the purchases or if the purchases were made with no intention of repayment.

Courts have recognized that "exceeding credit card limits is not *ipso facto* proof of intent to obtain money or property by false pretenses, false representation, or fraud in violation of 11 U.S.C. § 523(a)(2)(A)." *In re Satterfield, supra*, at 560; *In re Davis*, 42 B.R. 611 (Bankr.E.D.VA 1984); *In re Higgs*, 39 B.R. 181 (Bankr.N.D.OH 1981); *In re Wright*, 8 B.R. 625, 628 (Bankr.S. D.OH 1981); *In re Parker*, 1 B.R. 176 (Bankr.E.D.TN 1979); *In re Williamson*, 1 B.C.D. 15 (Bankr.E.D.TN 1974).

Other factors relevant in establishing the existence of an actual intent to deceive include: (1) the length of time between the charges made and the filing of bankruptcy; (2) whether an attorney has been consulted concerning the filing of bankruptcy before the charges were made; (3) the number of charges made; (4) the amount of the charges; and (5) the financial condition of the debtor at the time the charges are made. *See In re Stewart*, 7 B.R. 551, 555 (Bankr.M.D.GA 1980); *In re Satterfield, supra*, at 557–8.

■ In light of these standards, the evidence before this Court is not sufficient to satisfy the Plaintiff's heavy burden of proof. The Debtors did in fact exceed their credit limit but, from the evidence, unknowingly so. The December, 1984 statement shows that the Debtors had exceeded the credit limit. The Bank charged a $10.00 over-limit fee, which it also charged on subsequent statements. By assessing this charge as well as indicating that the Debtors, who had exceeded the limit, could skip a payment, the Bank has in effect approved of the Debtors' continued charging. Even if Debtors knowingly exceed the limit, the $10.00 charge appears to be an implied consent to such over-charge.

The monthly statements introduced into evidence indicate that the Debtors made payment on the account in 1984. The Debtors continued to use the card as they had in the past to make routine purchases. Their use of the card became greater in late 1984 and early 1985, reflecting Christmas purchases and items for the arrival of their baby. The amounts of the purchases, however, are not out of line with the Debtors' normal spending pattern. Other courts which have addressed this issue have similarly concluded that continued routine use of a credit card in line with prior purchases does not evince proof of wrongdoing or fraud. *See In re Griffis*, 29 B.R. 110, 113 (Bankr.D.VT 1983); *In re Davis, supra*, at 614. This case is not the type, often excepted from discharge, in which the debtors have gone on a whirlwind shopping spree on the eve of bankruptcy, making numerous purchases and accumulating debts with no intention to pay. *See, e.g., In re Wright, supra*, at 625; *In re Vegh, supra*, at 345.

Further support for the Debtor's intention to pay may be found in her letter of January 29, 1985. In the letter, Mrs. Shrader indicates that she would be unable to make the minimum monthly payments due to her absence from work on maternity

leave, but would resume payment as soon as possible. Counsel for Dominion contends that this letter clearly indicates that the Debtors knew their income was insufficient, yet continued to make purchases with the card in February and March of 1985 and that, in doing so, they violated § 523. The Court cannot accept this interpretation. Mrs. Shrader's request for the Bank to work with her in the situation was a recognition of her obligation and an expression of her intention to satisfy the debt when able to do so. She has not made any false representations but, rather, acted in good faith in apprising the Bank of her financial situation.

In considering these matters, we are mindful of *Bennett v. W.T. Grant Co.*, 481 F.2d 664, 666 (4th Cir.1973), which recognizes that a Bankruptcy Court as a court of equity must be guided by equitable principles. In matters of dischargeability, the evidence must be viewed not only from the conduct and circumstances of the Plaintiff, but likewise from the standpoint of the Defendant. *Id.*

In this case, Dominion knew that the Debtors had exceeded the credit limit. Upon receipt of the letter from Mrs. Shrader, it was aware of the Debtors' financial condition. The only action taken by the Bank was to assess the service charge against the account of $10.00 on several occasions for exceeding the limit. Had it so desired, the Bank could have revoked the line of credit and taken action to repossess the credit card. This, it never did. It cannot now be heard to complain for its failure to do so.

■ In the case of *First National Bank of Mobile v. Roddenberry*, 701 F.2d 927 (11th Cir.1983), the Eleventh Circuit reviewed the dischargeability of credit card transactions under Section 17(a)(2) of the Bankruptcy Act, the forerunner to § 523(a)(2) of the Bankruptcy Code. The Bankruptcy Court and District Court had found that the debts incurred prior to filing were dischargeable and those incurred after the filing nondischargeable. In reviewing the nature of credit transactions, the Eleventh Circuit found that an element of risk is inherent in the issuance of bank credit cards. Banks are willing to bear this risk because it is factored into the finance charges assessed on unpaid balances. Once credit is extended, it is up to the Bank, and not the courts, to decide when and if credit will be revoked. *Id.* at 932. The court concluded that:

> "The voluntary assumption of risk on the part of a bank continues until it is clearly shown that the bank unequivocally and unconditionally revoked the right of the cardholder to further *possession and use* of the card, and until the cardholder is aware of this revocation ... only after such clear revocation has been communicated to the cardholder will further use of the card result in liabilities obtained by 'false pretenses or false representations' for purposes of bankruptcy dischargeability."

It is the conclusion of this Court that the rule and reasoning in *Roddenberry* is a sound one. It properly places the burden on institutions which issue credit cards to effectively monitor their accounts. In doing so, banks can determine which debtors are delinquent in payment and whether they wish to continue to bear the risk that payment may or may not be made, as well as whether they wish to terminate the credit relationship by revoking the line of credit extended. Until the bank decides to revoke the use of a credit card, the debtor has an unrestricted use thereof. Here, Dominion in the December statement not only assessed the $10.00 over the limit fee but, additionally, invited Debtors to skip the current payment upon the account, apparently because of the "Holidays".

The evidence in this case indicates that the Bank did not make a request for return of the VISA card until after the petition was filed. When it did so, Mrs. Shrader promptly and properly returned the card to the Bank.

Accordingly, it is

ADJUDGED and ORDERED

that, based on the evidence presented, the debt to Dominion Bankshares represented

by use of the VISA credit card is discharged and the Complaint is hereby dismissed and closed.

Service of a copy of this Memorandum Opinion and Order shall be made by mail to the Debtor/Defendants; to Zane Dale Christian, Esquire, Counsel for Debtors; BROWNING, MOREFIELD & SCHELIN, Counsel for Plaintiff; and to Michael A. Bragg, Esquire, Trustee.