In re: Edward Lee McCUBBIN, Debtor,

**CHEVY CHASE SAVINGS BANK, N.A., Plaintiff,**

v.

**Edward Lee McCUBBIN, Defendant.**

**CITIBANK, F.S.B. Plaintiff,**

v.

**Edward Lee McCUBBIN, Defendant.**

**Bankruptcy No. 92–11529–8P7.**
**Adv. Nos. 92–887, 92–886.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 6, 1993.

Randolph A. Fabal, Tampa, FL, for plaintiffs.

Mark D. Jasperson, Tampa, FL, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matters under consideration are the dischargeability, vel non, of a debt admittedly due and owing by Edward Lee McCubbin (Debtor) to Chevy Chase Savings Bank, N.A. (Chevy Chase), and Citibank, F.S.B. (Citibank) (collectively, Plaintiffs). Chevy Chase and Citibank have each brought a single count Complaint seeking a determination of nondischargeability of their respective claims based on 11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code. In the interest of judicial economy, the parties agreed to try both claims together and this Court will deal with the claims of both Chase and Citibank in one single decision.

The claims of nondischargeability are based on the contention that the Debtor obtained cash advances by the use of credit cards issued by the Plaintiffs; that the charges were incurred at a time when the Debtor knew that he could not meet the obligations incurred or, in the alternative, that the Debtor had no intention of meeting the obligations incurred by the use of the credit card issued by the Plaintiffs. The facts relevant to the claim of nondischargeability as established at the final evidentiary hearing are as follows:

Prior to the commencement of this case, in March, 1990, the Debtor formed U.S.A. Mortgage Network, Inc., a Florida corporation (U.S.A. Mortgage). U.S.A. Mortgage was engaged in the business of mortgage brokering. The Debtor became the President and was the sole stockholder of this corporation. When Debtor formed the corporation he had approximately $92,000.00 in savings accumulated through his employment during the past decade, which according to the Debtor, provided him with an income ranging from $62,000.00 to $78,000.00. In 1989, his reported income was $176,800.00.

Although the corporation did generate some income, it never made a profit, and could not pay the Debtor any salary. As a result, the Debtor paid all his living ex-

penses from his savings and money market accounts. The Debtor did receive interest income in 1991 and 1992 totalling $6,149.89, on his money market and savings accounts, and in July, 1992 of $659.14, through a part-time sales position with Systems Express. In addition, the Debtor received $3,643.20 in August, 1992 as commission earned as a salesman with United Telephone of Florida. In sum, the Debtor's income for the tax year of 1991 was $901.00 and for the tax year 1992 was $3,680.00.

The Debtor's monthly budget for the same period, as stated in his Expense Summary included in his Statement of Financial Affairs, indicates that he had fixed monthly expenses during the period in question of approximately $3,000.00 to $3,100.00 per month which includes the required minimum payments on his credit cards. The Debtor remained current on his credit cards through the filing of his Petition for Relief.

From November 7, 1991, through July 1, 1992, the Debtor used his Chevy Chase Visa card to obtain four separate and substantial cash advances, totalling $11,600.00. (Pl.Exh. #A–1). In addition, the Debtor obtained a credit card from Citibank, in January, 1992, and he used the Citibank credit card to obtain cash advances in the amount of $5,000.00 between January 30, 1992 and May 4, 1992.

Debtor first contacted an attorney regarding bankruptcy on July 30, 1992 and on August 27, 1992 filed his Chapter 7 Petition. At the time of filing his Petition, the balance on his Chevy Chase Visa account was $11,607.57 and the balance of his Citibank Visa was $4,997.43. At the time Debtor incurred the charges by use of the credit card issued by the Banks he was unemployed, and had no income.

These are the salient facts upon which the Plaintiffs assert that these debts should be determined to be nondischargeable pursuant to § 523(a)(2)(A), which provides in pertinent part as follows:

§ 523. Exceptions to Discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

■ The standard of proof required to prove actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A) is proof by a mere preponderance of the evidence, *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), and no longer clear and convincing evidence. In order to sustain a claim of nondischargeability under § 523(a)(2)(A), the Plaintiffs must establish (1) that the Debtor made a representation; (2) at the time the representation was made, he knew the representation was false; (3) that the representation was made with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) the creditor sustained the alleged loss and damage as the proximate result of the representations. *In re Dougherty*, 84 B.R. 653, 565 (9th Cir. BAP 1988), citing *In re Robinson*, 55 B.R. 839, 845 (Bankr.S.D.Ind.1985) and *In re Shrader*, 55 B.R. 608, 610 (Bankr.W.D.Va.1985).

■ The use of a credit card is an implied representation to the issuer that the holder has both the ability and the intention to pay for the purchases and the cash advances. An intent to deceive may be inferred when the card holder knew, or should have known, that the card holder was insolvent and had no ability to pay the charges incurred. *In re Stewart*, 91 B.R. 489, 494 (Bankr.S.D.Iowa 1988); *In re Lay*, 29 B.R. 258, 260 (Bankr.M.D.Fla.1983); citing *In re Harper*, 19 B.R. 207 (Bankr. M.D.Fla.1982). A debtor's use of a credit card with no intention to pay charges is "actual fraud" within the meaning of exception to discharge. *In re Nogami*, 118 B.R. 846, 848 (Bankr.M.D.Fla.1990).

In determining whether a debtor intends to pay credit card charges, the courts have considered factors such as:

1) the length of time between the charges and the filing of bankruptcy;

2) whether an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3) the number of charges incurred during the relevant period;

4) the amount of the charges;

5) the financial condition of the debtor when the charges were made;

6) whether the charges exceeded the credit limit;

7) whether there were multiple charges on the same day;

8) whether the debtor was employed;

9) the financial sophistication of the debtor;

10) whether the debtor's spending habits suddenly changed; and

11) whether the purchases were made for luxuries or necessities.

*In re Nogami, supra, In re Dougherty*, 84 B.R. 653, 657 (9th Cir. BAP 1988).

Applying these principles to the relevant facts as established by the record, this Court is satisfied that the Debtor obtained the cash advances in question with knowledge that he would not be able to repay them. In support of his intention and his ability to repay the cash advances and obligations incurred, the Debtor points out that he had ample funds in his savings account and the fact that he has been steadily employed throughout his entire life.

The fact that the Debtor has been steadily employed throughout his entire life does not negate the undisputed fact that during the relevant ten-month period preceding the filing of his Petition for Relief, the Debtor had no income, that he lived on his savings account with the exception of two sporadic months of employment with two separate employers from which he earned a total of $4,302.34.

On November, 1991, the balance in his savings account was $20,000.00. It is apparent that within the twenty-one month period of March, 1990 through December, 1991, the Debtor's primary source of income was depleted by approximately $72,-000.00. The Debtor was depleting his savings by an average of $3,350.00 per month, an amount roughly equivalent to the Debtor's reported fixed monthly expenses. At this rate, the $20,000.00 remaining in the savings account as of December, 1991 certainly would have been entirely exhausted by June or July, 1992. In short, at the time the cash advances were obtained the Debtor had hardly any monies left in his savings account and with no income he could not reasonably anticipate meeting his fixed monthly expenses of $3,600.00 per month while repaying the $11,600.00 obligation incurred by cash advances to the Bank. The Debtor, a financially sophisticated individual, who at one time had very substantial assets and operated a mortgage brokerage business, could not have reasonably relied on his savings account which was being rapidly depleted. Moreover the Debtor had no expectation to obtain additional income sufficient to meet his obligations.

Furthermore, the Debtor while obtaining cash advances with his Bank Chevy Chase card totalling $11,600.00 was concurrently using his Citibank Visa card and obtained cash advances totalling $4,997.43. In fact, only two days after the Debtor obtained a $4,000.00 cash advance on his Bank card Debtor had obtained a $2,000.00 advance on his Citibank card. In light of the foregoing, this Court is satisfied that the Debtor obtained the cash advances through the use of the credit card through fraud and the outstanding liability to the Bank shall be excepted from the general bankruptcy discharge. A separate final judgment shall be entered in accordance with the foregoing.